AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 0 4 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                               ) Case No. **19MJ3776**
A Samsung Cellular Phone Model Galaxy S9+ with )
IMEI number 353321091217904                    )
                                               )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachement A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                              *Offense Description*
21 U.S.C. Sections 952, 960, 963            Unlawful Importation of Methamphetamine

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Pearlene Hill, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/4/19

_____
*Judge's signature*

City and state: San Diego, CA          Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The property/items to be searched are described as:

> Samsung Cellular Telephone
> Model: Galaxy S9+
> IMEI: 353321091217904
> Contained in Evidence Bag
> FP&F Case No. 2019250600095301

Currently in the possession of the U.S. Customs and Border Protection located at 9495 Customhouse Plaza, San Diego, California 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 8, 2019 through July 8, 2019:

 a. tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

 c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

 d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, **Target Device**; and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, §§ 952, 960, and 963.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF

Samsung Cellular Telephone
Model: Galaxy S9+
IMEI: 353321091217904
Contained in Evidence Bag
FP&F Case No. 2019250600095301

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Pearlene Hill, a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A (hereinafter the **Target Device**):

    Samsung Cellular Telephone
    Model: Galaxy S9+
    IMEI: 353321091217904
    Contained in Evidence Bag
    FP&F Case No. 2019250600095301

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as further described in Attachment B. This search supports an investigation and prosecution of Antony Gutierrez FIGUEROA for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized on July 8, 2019, from FIGUEROA by United States Customs and Border Protection (CBP) officers after he was arrested for driving a 2011 Nissan Altima into the United States through the Otay Mesa Port of Entry (POE) in San Diego, California with approximately 25.62 kilograms of methamphetamine concealed underneath a false floor of the vehicle. Since its seizure, the **Target Device** has been in

1  CBP's possession and was securely stored at 9495 Customhouse Plaza, San Diego, California 92154 on July 8, 2019.

3.  Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.  The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents and officers who are experienced in the area of narcotics smuggling. The evidence and information contained herein was developed from my personal knowledge or have had them related to me by persons mentioned in this affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation. Instead, it only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.  I am a Special Agent with HSI, which is a component agency of the DHS. I have been employed as an HSI Special Agent since May 2018. I am currently assigned to the HSI DSAC San Ysidro field office in San Diego, California. My job duties are to investigate the smuggling of controlled substances into the U.S. I have been cross-designated by the U.S. Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code. Prior to employment with HSI, I was employed as a Special Agent with the U.S. Secret Service (USSS), from August 2017 until May 2018; as a Uniformed Division Officer with the U.S. Secret Service (USSS), from September 2014 until August 2017; and as a Police Officer employed by the Chapel Hill Police Department (CHPD), from September 2008 until September 2014.

6.  Prior to becoming an HSI Special Agent, I graduated with honors with a Master of Science degree in Criminal Justice specializing in Homeland Security from Saint Joseph's University. I received a Bachelor of Arts Degree in Psychology from the

University of North Carolina at Chapel Hill and I served in the Army National Guard as a brigade senior movement non-commissioned officer.

7. As a HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. I also learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and the use of electronic evidence. I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances. I have participated in several narcotics investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances. Additionally, through the course of my duties as a Special Agent, I have discussed narcotics smuggling and trafficking with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug smuggling, trafficking, and dealing in the San Diego area.

8. Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. During the course of my duties I have (1) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs crossing the border from Mexico into the United States, and while operating inside the United States; (2) participated in the execution of search warrants on cellular phones related to drug investigations; (3) executed or participated in numerous arrests for drug-related offenses, including possession with the intent to distribute; and (4) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers and the structure of their narcotics smuggling networks.

9. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug smugglers and traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   e. Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

   f. Drug smugglers and traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

10. Based upon my training and experience as a Special Agent, and consultation with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

Specifically, I have learned, through my training, education, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

  a.  Tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

  b.  Tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

  c.  Tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

  d.  Tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

  e.  Tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephone; and

  f.  Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several

5

months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I have learned that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

## FACTS SUPPORTING PROBABLE CAUSE

13. According to a report prepared by CBP Officer Green, on July 8, 2019, at approximately 3:21 a.m., Antony Gutierrez FIGUEROA, a United States citizen, made an application for admission into the United States from Mexico through the Otay Mesa Port of Entry (POE). FIGUEROA presented himself as the driver of a red 2011 Nissan Altima bearing California license plate 7WJE142 (the "Vehicle") with Jasmine Rose HERNANDEZ as the passenger. CBP Officer Green asked FIGUEROA where he was going and FIGUEROA said Riverside, California. FIGUEROA stated he went to Mexico to visit family and the Vehicle belonged to his cousin. FIGUEROA gave CBP Officer Green two negative customs declarations. During the primary inspection, Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) Murray and his Narcotics/Human Detector Dog (NHDD) "Cerci" were conducting vehicle primary roving operations. "Cerci" alerted to a trained odor and indicated at the floor board under the front passenger seat of FIGUEROA's vehicle.

14. The Z-Portal operator, CBP Officer Aguiar, advised the Vehicle went through the Z-Portal for image analysis. CBPO Aguiar noticed anomalies on the floor of the right passenger side of the Vehicle.

15. According to a report prepared by CBP Officer Wright, he was assigned the secondary inspection of the Vehicle at approximately 3:45 a.m. CBP Officer Wright performed a seven-point inspection and noticed that the driver and passenger front floor board appeared to be altered. CBP Officer Wright removed the carpet of the Vehicle and noticed a false floor creating a space to the actual floor of the Vehicle, such that the floor

on which the driver (FIGUEROA) and passenger (HERNANDEZ) rested their feet was a few inches above the vehicle's actual, stock, floor. CBP Officer Wright removed the false floor and could see packages within. CBP Officer Wright removed forty-nine (49) packages from within the floor space. CBP Officer Wright probed one (1) of the packages which revealed a white crystal substance that field-tested positive for the characteristics of methamphetamine. The forty-nine (49) packages were vacuum sealed in plastic wrap and weighed approximately 25.62 kilograms (56.48 pounds).

16. FIGUEROA and HERNANDEZ were both placed under arrest at approximately 4:18 a.m. for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. The **Target Device** was seized from FIGUEROA upon his arrest. While processing FIGUEROA at the Port of Entry, two messages displayed in plain view, on the outside of the **Target Device's** lock screen: one message from "jacl_92" read "U guys safe?;" and another from "el.de.guerrero21" read "Bro wya" which I interpreted to ask "where you at."[1] Agents did not unlock or download the Target Device at the Port of Entry.

17. Based upon my experience and investigation in this case, I believe that FIGUEROA, HERNANDEZ, and other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine into the United States from Mexico. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that FIGUEROA used the **Target Device** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine and to otherwise further this conspiracy both inside and outside of the United States. Based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of FIGUEROA, such as telephone

---

[1] The Target Device had apparently been configured to display notifications, including messages, on the lock screen, which are displayed on the phone's screen without unlocking the phone.

numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. Therefore, for the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from April 8, 2019 to July 8, 2019.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephones and

memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and circumstances described above, I submit that there is probable cause to conclude that Antony Gutierrez FIGUEROA used the **Target Device** to facilitate the offense of importing methamphetamine. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

22. Because the **Target Device** was promptly seized during the investigation of FIGUEROA's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by FIGUEROA continues to exist on the **Target Device**. Based on the above facts and my training and experience, there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 will be found.

//
//
//
//
//
//
//

23. Therefore, I request that the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A and to seize the items listed in Attachment B, using the methodology described above, for the time period from April 8, 2019 to July 8, 2019.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Pearlene Hill
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 4th day of September, 2019.

_____
Hon. Barbara L. Major
United States Magistrate Judge

10